# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 3, 2010

Lyle W. Cayce
Clerk

No. 09-60432

HUGO ROMEO OROSCO,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A070-643-979

Before CLEMENT, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Petitioner Hugo Romeo Orosco ("Orosco") is a native and citizen of Guatemala who was convicted in 1994 and 2001 of violating section 20002(a) of the California Vehicle Code. In 2006, Orosco was charged with removal, and he conceded that he was removable as charged. Orosco applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1). An immigration judge ("IJ") denied Orosco's application. The IJ found that Orosco's 1994 and 2001 convictions were crimes involving moral turpitude and, as a result, the IJ found that Orosco was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

ineligible for cancellation of removal under § 1229b(b)(1).  Orosco appealed the IJ's decision to the Board of Immigration Appeals ("BIA").  The BIA agreed with the IJ's decision and dismissed Orosco's appeal.  Orosco petitions this court for review of the BIA's decision.  We GRANT Orosco's petition for review and REVERSE and REMAND.

## I. FACTUAL AND PROCEDURAL HISTORY

Orosco entered the United States in 1989 without first being inspected or admitted by an immigration officer.  In 2006, he and his wife were charged by the Department of Homeland Security with removal.  Orosco and his wife conceded that they were removable as charged, and they both applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1).  Under § 1229b(b)(1), an alien is eligible for cancellation of removal if he: (A) "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;" (B)"has been a person of good moral character during such period;" (C)"has not been convicted of an offense under" 8 U.S.C. § 1182(a)(2) (referring to crimes involving moral turpitude); and (D) "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."  After conducting a hearing on their applications for cancellation of removal, the IJ granted Orosco's wife's application but denied his application.  The IJ found that Orosco had satisfied requirements (A), (B), and (D) but was ineligible for cancellation because he could not satisfy requirement (C).

The IJ found that Orosco failed to satisfy requirement (C) because he had been convicted of a crime involving moral turpitude ("CIMT").  Specifically, in 1994 and 2001, Orosco was convicted of violating section 20002(a) of the California Vehicle Code.  At all times relevant to this appeal, section 20002(a) required a driver who was involved in an accident resulting in property damage

to immediately stop and leave certain information. CAL. VEH. CODE § 20002(a). The IJ found that Orosco's 1994 and 2001 convictions were for crimes involving moral turpitude. In making its determination, the IJ did not rely on evidence found in Orosco's record of conviction; instead, the IJ relied on testimony elicited from Orosco during the immigration hearing and a police report. Orosco appealed the IJ's decision to the BIA, arguing that he had not been convicted of a CIMT.

The BIA heard and dismissed Orosco's appeal. The BIA found that Orosco's convictions under section 20002(a) were categorically crimes involving moral turpitude and, therefore, that Orosco was ineligible for cancellation of removal. Alternatively, the BIA found that even if Orosco's convictions under section 20002(a) were not categorically crimes involving moral turpitude, it would find Orosco's convictions to be such under a modified categorical approach in light of Orosco's testimony and the police report. Orosco petitioned this court for review of the BIA's decision.

## II. JURISDICTION

This court has "jurisdiction to review . . . questions of law associated with [a] claim for discretionary relief." *Garcia-Maldonado v. Gonzales*, 491 F.3d 284, 287 (5th Cir. 2007) (citing 8 U.S.C. § 1252(a)(2)(D)). Because the issue of whether Orosco has been convicted of "a CIMT is a purely legal question, we have jurisdiction to consider [his] petition." *Id*.

## III. STANDARD OF REVIEW

We apply "a two-part standard of review to the BIA's conclusion that an alien has committed a crime involving moral turpitude: First, we accord substantial deference to the BIA's definition of the term 'moral turpitude;' and "Second, we review *de novo* whether the elements of the state or federal [offense at issue] fit the BIA's definition of a [crime involving moral turpitude]."

No. 09-60432

*Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006) (alterations in the original); *Rodriguez-Castro v. Gonzales*, 427 F.3d 316, 320 (5th Cir. 2005).

## IV. DISCUSSION

On appeal, Orosco contends that he is eligible for discretionary cancellation of removal because his convictions under section 20002(a) of the California Vehicle Code do not qualify as crimes involving moral turpitude. The BIA, through its administrative decisions, has crafted the following definition of the term "moral turpitude":

> Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.

*Amouzadeh*, 467 F.3d at 455. In determining whether a state law meets the BIA's definition of "moral turpitude," we employ a categorical approach that "focuses on the inherent nature of the crime, as defined in the statute . . ., *rather than the circumstances surrounding the particular transgression.*" *Id.* (quotation marks omitted) (emphasis added). "When applying the categorical approach, the statute must be read at the minimum criminal conduct necessary to sustain a conviction under the statute." *Rodriguez-Castro*, 427 F.3d at 320 (quotation marks omitted). "Generally, a statute that encompasses both acts that do and do not involve moral turpitude cannot be the basis of removal determination under the categorical approach." *Id.* "An exception to this general rule is made if the statute is divisible into discrete subsections of acts that are and those that are not [crimes involving moral turpitude]." *Amouzadeh*, 467 F.3d at 455 (quotation marks omitted) (alteration in the original). "If the statute is divisible, we [apply

a modified categorical approach and] look at the alien's record of conviction to determine whether he has been convicted of a subsection that qualifies as a" CIMT. *Id.* (quotation marks omitted).

The BIA applied the categorical approach and then, in the alternative, the modified categorical approach to find that Orosco's convictions under section 20002(a) of the California Vehicle Code were crimes involving moral turpitude. After applying both approaches to the facts at hand, we conclude that the BIA's decision was incorrect.

A. The Categorical Approach

Orosco was convicted in 1994 and 2001 of violating section 20002(a) of the California Vehicle Code.[1] As stated above, under the categorical approach, we must look at the "minimum criminal conduct necessary to sustain a conviction under" section 20002(a), and if that minimum conduct "is not necessarily

---

[1] In 1994, section 20002(a) read as follows:
(a) The driver of any vehicle involved in an accident resulting in damage to any property, including vehicles, shall immediately stop the vehicle at the scene of the accident and do either of the following:
(1) Locate and notify the owner or person in charge of that property of the name and address of the driver and owner of the vehicle involved and, upon locating the driver of any other vehicle involved or the owner or person in charge of any damaged property, upon being requested, present his or her driver's license, and vehicle registration, to the other driver, property owner, or person in charge of that property. The information presented shall include the current residence address of the driver and of the registered owner. If the registered owner of an involved vehicle is present at the scene, he or she shall also, upon request, present his or her driver's license information, if available, or other valid identification to the other involved parties.
(2) Leave in a conspicuous place on the vehicle or other property damaged a written notice giving the name and address of the driver and of the owner of the vehicle involved and a statement of the circumstances thereof and shall without unnecessary delay notify the police department of the city wherein the collision occurred or, if the collision occurred in unincorporated territory, the local headquarters of the Department of the California Highway Patrol. CAL. VEH. CODE § 20002(a) (1994).
The 2001 version of § 20002(a) differs only with respect to the text of subsection (a) in a way not material here.

contrary to accepted rules of morality," a conviction under § 20002(a) will not categorically be a CIMT. *See Garcia-Maldonado*, 491 F.3d at 288-89. Under section 20002(a)(2), a driver in an accident resulting in property damage to another vehicle will violate the statute if he: (1) stops; (2) leaves in a conspicuous place on the other vehicle his name, his address, and a statement of the circumstances that lead to the accident; and (3) notifies the police; but (4) willfully fails to leave the name of the owner of the vehicle. CAL VEH. CODE § 20002(a)(2) (1994) and (2001); *see People v. Crouch*, 166 Cal. Rptr. 818, 823 (Cal. Ct. App. 1980) (showing that an individual violates section 20002(a) by willfully failing to give all the information required by the statute).

"Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality . . . ." *Amouzadeh*, 467 F.3d at 455. The failure to report an accident involving a parked car to the local police department after leaving the name and address to notify the driver of the parked car of the incident is not conduct that rises to the level of moral turpitude; accordingly, we find that the BIA erred when it found that Orosco's convictions under section 20002(a) of the California Vehicle Code were categorically crimes involving moral turpitude. *See Garcia-Maldonado*, 491 F.3d at 289 (finding that a state statute was not categorically a CIMT because the statute could be violated by the failure to share information); *Serrano-Castillo v. Mukasey*, 263 F. App'x 625, 626 (9th Cir. 2008) (unpublished) ("Violations of Cal. Vehicle Code § 20002 do not categorically involve moral turpitude.").

B. The Modified Categorical Approach

As an alternative basis for its decision, the BIA held that Orosco's convictions would also be considered crimes involving moral turpitude under the modified categorical approach. The modified categorical approach could conceivably apply here only if there were some minimum criminal conduct that

would violate this statute and constitute a CIMT under the definition discussed above and some that would not be a CIMT. *See Amouzadeh*, 467 F.3d at 455 (quotation marks omitted) (alteration in the original). To determine whether section 20002(a) is such a statute, we begin our analysis by examining the *mens rea* requirement for a conviction under section 20002(a). An act can be a CIMT if it "involves . . . a vicious motive or a corrupt mind." *Amouzadeh*, 467 F.3d at 455; *Okabe v. INS*, 671 F.2d 863, 865 (5th Cir. 1982) ("Offering a bribe under this statute is a crime involving moral turpitude, for a corrupt mind is an essential element of the offense."). To be convicted under section 20002(a), the state must prove the following: "(1) that the defendant knew he had been involved in an accident, (2) which he knew resulted in damage to [property] and that, (3) he knowingly and willfully left the scene of the accident [and] (4) [willfully failed to give] the required information . . . ." *Crouch*, 166 Cal. Rptr. at 823. There is no corrupt mind or vicious motive element in section 20002(a). As a consequence, no act under section 20002(a) can be a CIMT based on our corrupt mind and vicious motive jurisprudence.

An act can also be deemed a CIMT if the act itself is "morally reprehensible and intrinsically wrong" or "malum in se." *Amouzadeh*, 467 F.3d at 455; *see also In re Lopez-Meza*, 22 I. & N. Dec. 1188, 1193 (B.I.A. 1999) (describing the following crimes as those "involving acts of baseness or depravity [which] have been found to be crimes involving moral turpitude even though they have no element of fraud and, in some cases, no explicit element of evil intent:" (1) murder, (2) rape, (3) robbery, (3) kidnaping, (4) voluntary manslaughter, (5) some involuntary manslaughter offenses, (6) aggravated assaults, (7) mayhem, (8) theft offenses, (9) spousal abuse, (10) child abuse, (11) and incest. ). We have deemed a number of acts to be intrinsically wrong or malum in se such that they are crimes involving moral turpitude. For example,

the failure to stop and render aid, *Garcia-Maldonado*,[2] 491 F.3d at 290 ("The subsection of section 550.21 that criminalizes failure to render aid proscribes behavior that runs contrary to accepted social duties . . . and is 'intrinsically wrong.'"), and theft, *Okoro v. INS*, 125 F.3d 920, 926 (5th Cir.1997). Section 20002(a) proscribes the willful failure to provide identifying information after knowingly being involved in an accident resulting in property damage. The failure to stop and provide information after an auto accident involving property damage is not morally reprehensible and intrinsically wrong or malum in se.

Finally, we will examine whether any act under section 20002(a) would involve as an element of the offense fraud or deception because such acts tend to be crimes involving moral turpitude. *Hyder v. Keisler*, 506 F.3d 388, 391 (5th Cir. 2007) ("We have repeatedly emphasized that crimes whose essential elements involve fraud or deception tend to be CIMTs."). "If the government must prove that the defendant acted . . . intentionally [to] deceive[] someone, we have been more likely to classify [the criminal act] as a crime of moral turpitude." *Omagah v. Ashcroft*, 288 F.3d 254, 260 (5th Cir. 2002). Section 20002(a) does not contain as an element of the crime any fraud or deceptive element; therefore, the government, in any case under section 20002(a), would not have to prove any fraud, false statement or deception to obtain a conviction. Accordingly, our fraud and deceit jurisprudence does not show that any act under section 20002(a) is a CIMT.

---

[2] The government makes much of the failure to stop under section 20002(a), and, relying on *Garcia-Maldonado*, argues that the failure to stop renders a crime a CIMT. Our decision in *Garcia-Maldonado* does not reach that far. The failure to stop was not the element that rendered the crime in *Garcia-Maldonado* a CIMT; rather, it was the failure to render aid that was dispositive because such conduct is intrinsically wrong. *See* 491 F.3d at 290.

No. 09-60432

In light of our precedents, section 20002(a) does not involve any conduct that can be deemed a CIMT and the modified categorical approach does not come into play.[3]

## V. Conclusion

Because we conclude that Orosco's convictions under section 20002(a) are not crimes involving moral turpitude, we find that the BIA erred when it deemed him ineligible for cancellation of removal.[4]  Accordingly, we GRANT Orosco's petition for review, and we REVERSE the BIA's decision and REMAND to the BIA for further proceedings consistent with this opinion.

---

[3] We note that in applying the modified categorical approach, the BIA relied on a police report and testimony elicited from Orosco during the immigration proceedings. Orosco objects to considering such evidence for this purpose.  Given our resolution of the CIMT issue, we decline to address this issue.

[4] Our conclusion that Orosco is *eligible* for cancellation of removal should not be confused with a finding that Orosco is entitled to cancellation of removal.  The Attorney General may ultimately choose to deny Orosco's application for cancellation, and such a decision is within the Attorney General's discretion.  *See* § 1229b(b)(1) (stating that the Attorney General "may cancel removal" of an alien who meets the statutory requirements for cancellation).